# UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ROGER D. COLLINS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-23-323-JAR |
| | ) |
| COMMISSIONER OF THE SOCIAL | ) |
| SECURITY ADMINISTRATION, | ) |
| | ) |
| Defendant. | ) |

### OPINION AND ORDER

Plaintiff Roger D. Collins (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is ordered that the Commissioner's decision be **AFFIRMED**.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42

U.S.C. §423(d)(2)(A).  Social Security regulations implement a five-step sequential process to evaluate a disability claim.  See, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g).  This Court's review is limited to two inquiries:  first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted).  The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  The court may not re-weigh the evidence nor substitute its discretion for that of the agency.  Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991).  Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight."  Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias,

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910.  Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities.  20 C.F.R. §§ 404.1521, 416.921.  If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied.  At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry.  If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work.  If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform.  Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work.  See generally, Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

933 F.2d at 800-01.

### Claimant's Background

Claimant was 56 years old at the time of the ALJ's decision. Claimant completed his high school education. Claimant has no past relevant work. Claimant alleges an inability to work beginning January 27, 2021 due to limitations resulting from obesity, polyarthritis, osteoarthrosis, and osteoarthritis with bilateral knee pain and chronic left shoulder pain.

### Procedural History

On January 27, 2021, Claimant protectively filed for Supplemental Security Income under Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On April 19, 2022, Administrative Law Judge ("ALJ") Bill Jones conducted an administrative hearing by telephone due to the extraordinary circumstances posed by the COVID-19 pandemic. On April 28, 2022, the ALJ issued an unfavorable decision. On June 27, 2022, the Appeals Council denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that, while Claimant suffered from a severe impairment, he retained the residual functional capacity ("RFC") to perform medium work.

**Error Alleged for Review**

Claimant asserts the ALJ erred in (1) reaching an RFC which is not supported by substantial evidence; (2) failing to properly account for Claimant's severe obesity in the RFC; and (3) misapplying the Grid Rule.

**RFC Determination and Consideration of the Effect of Obesity**

In his decision, the ALJ determined Claimant's obesity constituted a severe impairment. (Tr. 18). The ALJ found none of Claimant's alleged conditions met a listing. (Tr. 19). As a result of the limitations caused by his severe impairment, Claimant was found to retain the residual functional capacity to perform medium work. Id. The ALJ determined that, considering Claimant's RFC, age, education, and work experience, the Medical-Vocational Rule ("Grids") dictated a finding that Claimant was not disabled. Consequently, the ALJ concluded that Claimant had not been under a disability since January 27, 2021, the date of the filing of the application. (Tr. 22-23).

Claimant first contends the ALJ reached an unsupported RFC as to his physical functional limitations. The ALJ acknowledged that Claimant complained of bilateral knee pain and chronic left shoulder pain but concluded that these conditions were not severe. (Tr. 18-19). Claimant asserts that the RFC which the ALJ formulated does not accommodate the limitations caused by these conditions. The medical record indicates that an x-ray was taken of Claimant's left shoulder in October of 2021. The impression from this shoulder x-ray was that Claimant had glenohumeral joint severe osteoarthrosis and mild osteoarthritis of the acromioclavicular joint. (Tr. 309).

Despite this finding, the physician's assistant noted that the left shoulder x-ray was "negative." (Tr. 312). The same notation indicated that the knee x-ray was "[w]ithin normal findings, normal alignment, no fracture, normal soft tissue." Id. In his decision, the ALJ acknowledged that Claimant's left shoulder "revealed some osteoarthritis and imaging of the claimant's knees revealed only 'mild' degenerative changes." (Tr. 18). He further found that Claimant did not seek any other treatment for these conditions than medication. (Tr. 18-19).

The ALJ noted that Claimant was examined by Dr. Jeffrey Young in April of 2021. Dr. Young found Claimant had "pain upon passive and active motion testing at bilateral knees without limited [range of motion] and pain upon passive and active motion testing at left shoulder with limited [range of motion]." Grip strength was 5/5. Dr. Young observed that "Claimant moved about exam room easily, had full [range of motion] of spine. Finger to thumb opposition adequate. Fine tactile manipulation of objects is normal. SLR negative bilaterally in seated and supine positions. Toe and heel walking normal bilaterally. . . . The claimant ambulates with a stable gait at an appropriate speed without use of assistive devices." (Tr. 285). The ALJ acknowledged these findings. (Tr. 20).

Claimant is critical that the ALJ did not obtain a consultative opinion on Claimant's functional limitations since no physician in the record made such an assessment. "[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." White v. Barnhart, 287 F.3d 903, 906 n. 2 (10th Cir. 2001). A residual functional capacity assessment "must include a narrative discussion

describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." Soc. Sec. R. 96–8p.  The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work related activity the individual can perform based on evidence contained in the case record. Id.  The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." Id.  However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question."  Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012).

Moreover, "the ALJ [i]s not required to adopt or rely on any medical source opinion in making her residual functional capacity assessment because the determination of residual functional capacity is not a medical opinion." Moses v. Astrue, 2012 WL 1326672 at *4 (D.Colo April 17, 2012).  Instead, residual functional capacity is assessed "based on all of the relevant medical and other evidence," 20 C.F.R. § 404.1545(a)(3), "including medical records, observations of treating physicians and others, and plaintiff's own description of his limitations," Noble v. Callahan, 978 F.Supp. 980, 987 (D.Kan. 1997).  Although the ALJ's determination must be grounded in some medical evidence, see Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir. 1995), it ultimately is an administrative determination reserved to the Commissioner, 20 C.F.R. § 404.1546; Rutledge v. Apfel, 230 F.3d 1172, 1175 (10th Cir. 2000).  Consequently, the ALJ was not required to obtain a further medical source opinion to establish Claimant's limitations or to

fulfill his duty to fully and fairly develop the record.  The ALJ was entitled to rely upon the medical information provided and reach a conclusion on the appropriate RFC.  Claimant argues that the ALJ could not have reached a finding that Claimant could perform medium work because he could not perform the work requirements given his severe impairment of obesity and non-severe impairments of left shoulder and knee problems.  The evidence does not demonstrate further restrictions.  As noted, Claimant showed little restrictions attributable to his knees and minimal restrictions in range of motion due to his shoulder.  Further, the state agency reviewing physicians found Claimant had no severe impairments.  (Tr. 44-47, 53-57).  The ALJ rejected these findings and found the more restrictive RFC.  (Tr. 21).  The evidence simply does not support the level of restriction urged by Claimant.

Claimant also contends the ALJ did not fully consider the effects of his morbid obesity in the RFC.  Plaintiff consistently had a BMI in the 40's throughout the relevant period.  However, the record does not bear out that his obesity alone or in combination with other impairments resulted in further limitations.  Social Security Ruling 19-2p requires an ALJ consider that "[t]he combined effects of obesity with another impairment(s) may be greater than the effects of each of the impairments considered separately" when assessing the RFC. Soc. Sec. Rul. 19-2p, 2019 WL 2374244, *4 (May 20, 2019). "Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment(s)." Id. at *2.  Each case is evaluated based on the information in the record, resulting in "an individualized assessment of the effect of obesity on a person's functioning[.]" Id. at *2, *4. "[G]eneral assumptions about the

severity or functional effects of obesity combined with [other] impairments" will not be made. Id. at *4.

However, Claimant points to no evidence of further functional limitation brought about by his obesity. He engages in speculation that it might affect his knees and appeals to the Court's "common sense" in finding limitations – "Claimant is obese therefore there must be limitations"; but the medical evidence does not bear out any additional limitations. Rose v. Colvin, 634 F. App'x 632, 637 (10th Cir. 2015)(" Ms. Rose points to no medical evidence indicating that her obesity resulted in functional limitations."). The Court finds the RFC is supported by substantial evidence.

**Application of the Grids**

Claimant contends the ALJ erred in applying the Medical-Vocational Guidelines (the "Grids") 20 C.F.R., Pt. 404, Subpt. P, App. 2, when he suffered from the non-exertional impairment of pain. With the Grids, the Commissioner has provided a tool to aid in making uniform, efficient decisions in determining the types and numbers of jobs existing in the national economy for certain classes of claimants. Heckler v. Campbell, 461 U.S. 458, 468 (1983). However, the Grids are applicable "only when they describe a claimant's abilities and limitations accurately." Id. 461 U.S. at 462 n. 5; see also Channel v. Heckler, 747 F.2d 577, 579 (10th Cir. 1984). Because the Grids are based upon the physical exertion requirements for work in the national economy, they may not be fully applicable for claimants who have non-exertional limitations. Id. at 580. But, "[T]he mere presence of a non-exertional impairment does not automatically preclude reliance on the grids. Use of the grids is foreclosed only '[t]o the extent

that non-exertional impairments further limit the range of jobs available to the [plaintiff].' " Id. at 583, n. 6 (quoting Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983)).

The ALJ evaluated Claimant's assertions that pain further limited his ability to engage in basic work activity. However, while he recognized that Claimant suffered from pain, the ALJ concluded that the medical record did not support a finding of further limitation caused by Claimant's pain. (Tr. 21). As a result, the application of the Grids by the ALJ was not precluded by the presence of a non-exertional impairment. This Court finds no error in the ALJ's use of the Grids.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **AFFIRMED**.

IT IS SO ORDERED this 30th day of September, 2024.

_____
JASON A. ROBERTSON
UNITED STATES MAGISTRATE JUDGE